

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

FILED

DEC 30 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA



LARRY KLAYMAN
7050 W. Palmetto Park Rd
Boca Raton, FL, 33433

          Plaintiff,

v.

MATTHEW KAISER
c/o 1099 14th St NW
8th Floor West
Washington, DC, 20005

and

JULIA PORTER
515 5th St NW
Washington, DC 20001

and

HAMILTON FOX, III,
515 5th St NW
Washington, DC 20001

and

LAWRENCE K. BLOOM
515 5th St NW
Washington, DC 20001

and

JOHN DOES 1 TO 5
515 5th Street NW
Washington, D.C. 20001

          Defendants.

**COMPLAINT**

**CV20          9490**

LB

## I.   INTRODUCTION

1

Plaintiff Larry Klayman ("Mr. Klayman") hereby sues Defendants Matthew Kaiser ("Defendant Kaiser"), Julia Porter ("Defendant Porter"), Hamilton Fox, III ("Defendant Fox"), H. Clay Smith III ("Defendant Smith") and Lawrence K. Bloom ("Defendant Bloom"), and John Does 1 to 5, for tortious interference and abuse of process.

## II.      JURISDICTION AND VENUE

1.      This Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

2.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(3) in that this is a district in which the defendants are subject to the court's personal jurisdiction with respect to this action as the acts and practices alleged herein occurred and caused damage in this district.

## III.     PARTIES

3.      Plaintiff Larry Klayman (hereafter Plaintiff Klayman or Mr. Klayman), is citizen of Florida and an attorney and public interest advocate, author, columnist and syndicated radio talk show host ("Special Prosecutor with Larry Klayman" on Radio America) and private attorney who practices and broadcasts in this district and nationally.

4.      Defendant Kaiser is an individual as serves as the Chair of the District of Columbia Board on Professional Responsibility

5.      Defendant Porter is an individual and is employed as Bar Deputy Disciplinary Counsel at Office of Bar Disciplinary Counsel ("ODC") in the District of Columbia.

6.      Defendant Fox is an individual and is employed as Bar Disciplinary Counsel at ODC in the District of Columbia.

7.      Defendant Bloom is an individual and is employed as a Staff Attorney at ODC in the District of Columbia.

8.      H. Clay Smith III is an individual and an Assistant Bar Disciplinary Counsel at ODC in the District of Columbia.

9.      John and Jane Does 1 to 5 are persons who are part of the disciplinary apparatus of the District of Columbia Bar. Their identities will be disclosed during discovery.

10.     On information and belief, each and every Defendant, including John and Janes Does 1 to 5, are citizens of the District of Columbia and each and every one of them acted in concert as joint tortfeasors outside of their authority in the illegal and unethical acts and practices alleged in this Complaint.

IV.     **STANDING**

11.     Mr. Klayman has standing to bring this action because he has been directly affected and victimized by the unlawful conduct complained herein. His injuries are proximately related to the conduct of Defendants, each and every one of them acting in concert jointly and severally in this district.

V.      **FACTS**

## **BACKGROUND FACTS**

12.     ODC was created in 1972 as a result of the Court Reorganization Act, which established the D.C. Court of Appeals ("DCCA"). Pursuant to Rule XI of the District of Columbia Court of Appeals Rules Governing the Bar, the ODC purports to serve as the chief prosecutor for attorney disciplinary matters involving active or inactive attorneys who are members of the District of Columbia Bar. ("D.C. Bar"). Until recently, its mission statement was as follows: "In this capacity, the ODC has and claims and admits to have a dual function: to

3

protect the public and the courts from unethical conduct by members of the D.C. Bar and to protect members of the D.C. Bar from unfounded complaints."

13.     Defendants, each and every one of them, acting in concert, have ignored this requirement and have engaged in the equivalent of a partisan politically and gender based agenda and in effect a "jihad" to have Mr. Klayman removed from the practice of law, after Klayman's 40-year history of continuously been a member in good standing of the District of Columbia Bar. Mr. Klayman has been a member continuously in good standing of The Florida Bar for almost 43 years.

14.     Indeed, Defendant Porter admitted as much at a hearing in a disciplinary matter where they could not even obtain a preliminary non-binding finding by a Board of Professional Responsibility Ad Hoc Hearing Committee that Mr. Klayman had violated any ethical rule of the bar. During the closing argument at the hearing which led to this finding, Defendant Porter on behalf of herself and ODC incredibly proclaimed and admitted that it was her and ODC's position that Plaintiff Klayman "should not continue to have the privilege of being a lawyer." Exhibit 1. This is Defendants' admitted agenda, because they loathe his conservative/libertarian political philosophy and his pro-Trump public interest and private advocacy. Defendants are all died in the wool leftists who live and work in the highly partisan, divisive and vicious world of the District of Columbia, who many refer to as "the swamp."

15.     As part of their scheme to severely and irreparably harm and damage Mr. Klayman by attempting to remove him from the practice of law, Defendants have chosen to use the tactic of harassing and financially harming Plaintiff Klayman, if not bankrupting him, by a series of bar proceedings that lack merit, but which incur huge attorney time, resources and monies to defend. Thus, even when they fail in their attempts to have Mr. Klayman disbarred,

4

they are attempting to accomplish the same purpose by destroying his legal practice and he and his family's well-being financially by having to defend, at huge cost in terms of legal fees, costs and time, their frivolous attempts, at District of Columbia taxpayer expense but not their own, to have him removed from the practice of law in the District of Columbia.

16.   It is apparent that Defendants' politically and gender based attempts to remove Plaintiff Klayman from the practice of law stem from his conservative, pro-Trump public and private advocacy as the founder of both Judicial Watch and now Freedom Watch, which they abhor. While this regrettably is a sign of the times in the highly charged and vicious political and ideological atmosphere of the nation's capital, this conduct is both unethical and illegal nevertheless.

17.   Indeed this is the same ODC and the D.C. Bar's disciplinary apparatus which have entertained a frivolous bar complaint by leftist law professors, including avowed communist law professor Michael Tigar, filed against Kellyanne Conway for statements made on television,[1] as well as recent frivolous complaints again by four leftist former District of Columbia Bar presidents, as well  as former assistant ODC counsel Michael Frisch,  against even Attorney General William Barr.[2] On the other hand, this partisan ODC and the D.C. Bar's disciplinary apparatus refused to investigate a complaint filed by attorney Ty Clevenger against David Kendall, Hillary Clinton's attorney who admittedly aided in the destruction of emails and thus an obstruction of justice pertaining to the Benghazi scandal[3]. These are just a few examples

---

[1] https://www.washingtonpost.com/politics/law-professors-file-misconduct-complaint-against-kellyanne-conway/2017/02/23/442b02c8-f9e3-11e6-bf01-d47f8cf9b643_story.html
[2] https://abovethelaw.com/2020/07/bill-barr-racks-up-yet-another-bar-complaint/
[3] https://personalliberty.com/state-bar-prosecutors-flouting-law-protecting-hillary-clinton-lawyers/

of their politically based selective prosecutions. It is clear that Defendants have been systematically targeting conservatives and Republicans, including Mr. Klayman.

18.     Defendants Kaiser, Fox and the other Defendants have made his leftist political ideals known, as most have contributed heavily to Democratic presidential campaigns as well as other leftist Democrats, persons who Mr. Klayman sued in his pubic interest capacity at Judicial Watch and now Freedom Watch.

19.     Not coincidentally, Defendants Kaiser, Fox, Porter, Bloom and Smith and ODC have engaged in similar unethical, if not illegal, tactics with regard to other members of the District of Columbia Bar who they arrogantly decide for themselves, for whatever improper reason, should no longer have the privilege of practicing law in the District. Another District of Columbia lawyer, J.P. Szymkowicz, the only Republican member of the D.C. government, filed a complaint for similar unethical and illegal conduct, which has given rise to an unprecedented internal Board of Professional Responsibility ("Board") review of the unethical and illegal conduct of Defendant Porter and ODC. Such an internal review is almost unheard of in the annals of the history of ODC and the Board. Exhibit 2. Despite this internal review, which was for appearance purposes only, no action has been taken under the direction and authority of Defendant Kaiser, who is Chairman of the Board of Professional Responsibility which oversees and directs D.C. Bar disciplinary complaints and proceedings, as there exists a "circle the wagons' mentality and approach among the D.C. Bar's compromised disciplinary apparatus, based on false claims that they can maliciously and vindictively do as they please as a result of false and misleading claims that they have "absolute immunity." This absolute immunity does not exist, as it was declared illegally by extra-legal fiat, not having been enacted into the law of the District of Columbia by the District of Columbia City Council. Thus, there simply is no

absolute immunity. It is well established that prosecutors do not have absolute immunity when they abuse their offices and processes, and act outside of the scope of their authority. "An official is not protected by absolute immunity if he "act[ed] in a manner that is manifestly or palpably beyond his authority … " *Banneker Ventures, LLC v. Graham*, 225 F. Supp. 3d 1, 11 (D.D.C. 2016); *Richardson v. District of Columbia*, 711 F. Supp. 2d 115 (D.D.C. 2010).

## FACTS PERTAINING DIRECTLY TO MR. KLAYMAN'S CLAIMS

20.     On June 11, 2020, the DCCA issued a 90-day suspension order against Mr. Klayman regarding an alleged conflict of interest that occurred over a decade ago, a more than incredible twelve years ago to be exact.

21.     Mr. Klayman is and has been a longstanding member in good standing of the U.S. Court of Appeals for the Ninth Circuit. ("Ninth Circuit").

22.     The Ninth Circuit issued an Order to Show Cause on August 3, 2020 as to why reciprocal discipline should not be issued with regard to the DCCA Order. *In re Larry Klayman, Esq.*, 20-80112

23.     On December 2, 2020, after Mr. Klayman had already served and finished his suspension with the D.C. Bar, the Ninth Circuit issued an order stating:

> The court is informed by the Office of Disciplinary Counsel of the District of Columbia Bar that, at the conclusion of his 90-day suspension, respondent Larry E. Klayman was eligible to be readmitted to the bar, and the Office of Disciplinary Counsel did not oppose his reinstatement. In view of that development, this court's August 3, 2020 order to show cause is discharged. This disposition is without prejudice to the initiation of reciprocal discipline proceedings based on unrelated attorney discipline proceedings pending at the District of Columbia Court of Appeals.

24.     As shown in the December 2, 2020 order, the Defendants had *ex parte* communications with the Ninth Circuit, which communications were behind Mr. Klayman's back and for which he was not copied or notified in any other manner. As set forth below, this is

not the first time that this has happened before other courts and bar associations, all with the intent and design to maliciously and vindictively harm Mr. Klayman and his clients.

25.     This December 2, 2020 order also shows that Defendants have continued to try to harm Mr. Klayman by notifying the Ninth Circuit of another ongoing non-final disciplinary proceeding which has not even been decided. This was done solely to prejudice Mr. Klayman's and his clients' standing with the Court by harming their reputations and good will.

26.     Ongoing D.C. Bar disciplinary proceedings, which have come to no final determination, are not to be used to smear, prejudice and harm a respondent, especially here, where Mr. Klayman strongly believes that he will ultimately prevail, and is innocent until proven guilty under our system of jurisprudence.

27.     As stated previously, this is not the first time that Defendants have tried to illegally interfere with and harm Mr. Klayman's legal practice and thus his clients' interests as well.

28.     While Mr. Klayman's challenge of the DCCA Order was still pending, and there had been no final order from the DCCA, Defendants decided to tortuously interfere with Mr. Klayman's profession as a conservative public interest attorney by sending out *ex parte* letters, which were not copied on Mr. Klayman to various other courts and bar associations that Mr. Klayman is admitted and/or licensed to practice in notifying them of the DCCA order.

29.     These other letters were sent out behind Mr. Klayman's back, without Mr. Klayman's knowledge or consent, and he only learned of such letters when the U.S District Court for the Northern District of Texas ("NDTX") posted one on its docket, a considerable period after Plaintiff Klayman politely asked the NDTX to disclose how it had learned of the June 11, 2020 order of the DCCA. When asked this question, the Honorable Jane Boyle, who

presided over a potential reciprocal discipline in the NDTX, did not initially disclose the letter, but it later was placed on the court record.

30.     On information and belief, Defendants sent out *ex parte* letters to all of the state and federal courts that Mr. Klayman is admitted to practice in and where the D.C. Bar has no jurisdiction, despite any express authority under the District of Columbia Rules of Professional Conduct to do so.

31.     Mr. Klayman has asked Defendants to provide copies of these *ex parte* communications, but Defendants have flatly refused to do so, evidencing  that they know they have something to hide.

32.     This *ex parte* letter was signed by Defendant Bloom, and prepared and sent by Defendants, working together in concert as joint tortfeasors.

*33.*     Defendants sent this *ex parte* letter to the NDTX despite the fact that they knew that the severely delayed D.C. Bar disciplinary proceeding and subsequent DCCA order would at a minimum have been subject to laches, and even an expiration of the statute of limitations,  in Texas. *See Gamez v. State Bar of Tex.*, 765 S.W.2d 827, 833 (Tex. App.—San Antonio 1988, writ denied).

34.     As a result of Defendants' conduct, the Honorable Jane Boyle ("Judge Boyle") in the NDTX opened a disciplinary case against Mr. Klayman regarding reciprocal discipline. (3:20-mc-00043).

35.     Thus, it appears that Defendants have again tortuously interfered again by sending out *ex parte* communications to this Court, behind Mr. Klayman's back and without copying him on any correspondence, in order to harm him and his ability to practice law in other jurisdictions.

36.     Plaintiff Klayman has notified Defendant Kaiser, Chairman of the Board of Professional Responsibility of the District of Columbia Bar, who is the head of this highly partisan and compromised D.C. Bar disciplinary apparatus, as set forth in Exhibit 3, and he has failed to take remedial action, thus necessitating this complaint, as he has participated in and/or ratified the illegal and unethical acts alleged herein.

37.     This communication with Defendant Kaiser, who is a highly partisan advocate and whose activism  opposes that of Mr. Klayman – underscores that he has written articles for his leftist publication "Above the Law",[4] extolling the "honesty" of Hillary Clinton and trashing President Donald Trump and has donated to those who Mr. Klayman in his public interest capacity has sued such as the Clintons, President Barack Obama and President-elect Biden, effectively admitted that his agents of the District of Columbia Bar have sent and are vindictively sending unsolicited letters to courts and bar associations concerning pending non-final disciplinary proceedings for which they have no authority to do under the District of Columbia Bar Rules of Professional Responsibility, in order to harm and prejudice Mr. Klayman's interests with his clients and otherwise and to damage his reputation and good will and standing in the legal profession. Exhibit 3. Defendant Kaiser has not coincidentally donated heavily to leftist Democrats and presidents and president elects such as Joe Biden, who Mr. Klayman has sued in his pubic interest and personal legal capacity.

38.     The December 16, 2020 letter of Defendant Kaiser admits, "**You do not identify any impropriety in Disciplinary Counsel's alleged sharing of the publicly-available Board**

---

[4] https://abovethelaw.com/2016/08/hillary-clinton-truthfulness-and-bias-in-white-collar-cases/; https://abovethelaw.com/2016/07/trump-and-tyranny/

**Report in Board Docket No. 17-BD-063, with courts and other disciplinary authorities**."

Exhibit 3. This response and dodge constituted an admission of wrongdoing as alleged herein.

39.     Importantly, the ex parte communications which were not copied on Mr.

Klayman, which the Defendants refuse to produce as a matter of professional ethics and simple

courtesy, are exemplary of the dishonest, illegal and unethical pattern and practices of the

Defendants and the misuse of bar processes and thus their abuse of process. These acts of the

Defendants, acting in concert as joint tortfeasors, were outside of the scope of their authority as

officials of the District of Columbia Bar, and are on-going. *Richardson v. District of Columbia*,

711 F. Supp. 2d 115 (D.D.C. 2010). Mr. Klayman recently replied to the letter of Defendant

Kaiser, Exhibit 5, and wrote:

> I am in receipt of your letter of December 16, 2020, and am again shocked by
> your continued conduct in not addressing serious unethical actions by those in the
> disciplinary apparatus of the District of Columbia Bar (hereinafter "Bar") , which
> you are encharged to oversee as Chairman of the Board of Professional
> Responsibility. As set forth below, it would appear that your circle the wagons
> approach to policing your own house is the way you go about being Chairman of
> the Board. As set forth below, I can now only conclude that you are part and
> parcel to this unethical misconduct either directly or through ratification of the
> actions of those you oversee.
>
> Specifically, in response to my letter and filing of December 10, 2020, which
> brought to your attention ex parte correspondence by the Office of Disciplinary
> Counsel gratuitously, without legal basis, warning the U.S. Court of Appeals for
> the Ninth Circuit that there is a pending but not final disciplinary proceeding in *In
> re Klayman*, 20-80112, you again turn a blind eye in refusing to even conduct in
> internal review of these vindictive, partisan and discriminatory acts. Exhibit 1. It
> is more than likely that this correspondence forwarded the factually and legally
> flawed Board Report in which you recommended my suspension for 18 months
> with a prohibitive reinstatement provision. This fatally flawed Board Report,
> which you wrote,  is now being cited by the District of Columbia Court of
> Appeals in a show cause order why I should not be suspended in the interim as
> they take up the appeal in chief.
>
> In this regard, I have to also conclude under the circumstances that you have
> likely had ex parte communications with the District of Columbia Court of

Appeals, since even the consideration of an interim suspension is unheard of. I also demand disclosure of any such communications.

The Board's Report and recommendation is not only just that, and is thus subject to review de novo by the District of Columbia Court of Appeals. As set forth in excruciating detail in my appellate briefs, it contains a myriad of false and misleading factual findings, either intentionally or due to your failure to fully and thoroughly review the record before a biased hearing committee, which comprised an avowed and proud communist, Michael Tigar, and an equally biased chair Anthony Fitch, who as extreme leftists loath everything that I stand for as a conservative and pro-Trump public interest advocate.

To add insult to injury, when I asked you and ODC to provide me with copies of ex parte correspondence and/or communications with the Ninth Circuit – which again likely included the Board Report and recommendation containing your misleading and false factual and legal findings and conclusions -- this reasonable request fell on deaf ears, as evidenced by this missive in your letter of December 16, 2020:

"You do not identify any impropriety in Disciplinary Counsel's alleged sharing of the publicly- available Board Report (which you wrote) in Board Docket No. 17-BD-063, with courts and other disciplinary bodies." *See* Exhibit 2

You also wrote disingenuously that you would not order an internal review of this unauthorized gratuitous and vindictive action obviously intended to prejudice and harm me and my clients' interests before other courts and bar associations. Clearly, since the Board Report's recommendation, which is just that, is subject to be not accepted and instead rejected by the reviewing appellate court, particularly given its glaring factual and legal errors, much less the lack of clear and convincing evidence proving any ethics violation, these ex parte communications were simply intended to damage me and my clients' interests. They constitute egregious unethical acts done outside of the authority of the Bar's disciplinary apparatus and its rules and policies.

This is in addition to "bar officials" smearing, defaming and harming me and my clients with extra-legal and unethical comments which they made to Politico and which were widely published and disseminated in an article titled "*A Conservative Legal Gadfly Faces the Music*" on September 16, 2020, which has spawned a defamation lawsuit. *See Klayman v. Politico LLC et al*, 50-2020-CA-011868 (15th Jud. Cir. Fl.) Exhibit 3. Again, you refused to police this unethical and illegal conduct, more than just suggesting that the public comments may have come from you. In any event, you have personally ratified them, as you have taken no action to have them retracted or investigated by way of a requested internal review by the Board.

I will not belabor other correspondence and motions, which are a matter of record, which I have sent to and filed with you and the Board which you oversee, as you also sloughed off any professional responsibility in addressing any of them on the merits as well.  Indeed, when I asked for emergency reconsideration of the gross factual and legal errors in the above-referenced Board Report and recommendation, you held back and did not respond timely, to force me to file exceptions before the appeal time would have otherwise run, and then in a totally disingenuous and transparent letter sloughed off your responsibility for the false facts which you placed on the record by arrogantly telling me to take a hike, that is to tell it to the appellate court.

At a minimum, notwithstanding your continued failure to police the unethical misconduct of your agents of the Bar's disciplinary apparatus, as well as yourself, I demand immediate receipt of the ex parte correspondence which you admit was sent, without even the professional courtesy of copying me on them, in order that I could defend my interests and my clients' interests.

And, I only learned of these ex parte communications because the attached order of the Ninth Circuit effectively makes reference to them.

In sum, Mr. Kaiser, if you do not hold yourself and your agents, who you oversee at ODC and the Bar's hearing committee in *In re: Klayman*, 18-BG-0100 accountable for this unethical conduct, you should not continue as the Chairman of the Board of Professional Responsibility and simply resign or be removed from this role. Frankly, I am tempted to run for office myself at the Bar, to bring this course of unethical conduct to the attention to all of the Bar's members and/or to use alternative appropriate ethical and legal means to expose and remedy this pattern of abuse of bar proceedings.

Further and in this regard, consider this and my prior correspondence, which I incorporate herein by reference,  to be a disciplinary complaint lodged against you for your participation in and furtherance of unethical conduct by those you are encharged to oversee. Any claims of absolute immunity are inoperative not just under these extreme  circumstances, but because any such immunity has never been promulgated and enacted by the District of Columbia City Counsel, but rather is nonexistent, as it was simply declared by non-binding fiat, which is of no force or legal effect. Prosecutors are not immune from abuses of process, which as an experienced criminal defense lawyer you obviously know. *Richardson v. District of Columbia*, 711 F. Supp. 2d 115 (D.D.C. 2010).

Please govern yourself and those who you oversee at ODC and the subject communist anti-conservative infected hearing committee accordingly, as I will not go off into the sunset without seeking appropriate legal redress, as you refuse to do your job as Chairman of the Board of Professional Responsibility, and worse have even apparently participated in and covered up the unethical conduct for

which I hereby complain in this and other letters and pleadings in the above-styled cases.

Simply, put all of this is not just outrageous but unethical and illegal. I will not turn the other cheek, as I have as many rights as you, the Bar's disciplinary apparatus and the other members of the Bar to defend myself to the fullest extent of ethics and the law. *See* Exhibit 5, incorporated herein by reference.

40.    Tellingly, on the hearing committee which issued the recommendation in *In re Klayman*, 17-BD-063, which gratuitously and without legal authority was brought to the attention of the Ninth Circuit, was proud communist Michael Tigar, who, along with another partisan leftist who chaired the committee, Anthony Fitch,  loathes Mr. Klayman's conservative public interest and pro-Trump advocacy. Exhibit 4. This is all under the purview of Defendant Kaiser, who is the head of the District of Columbia Bar's compromised disciplinary apparatus. A request by Mr. Klayman to Mr. Kaiser to conduct an internal review on how an avowed communist was placed on a hearing committee to judge Mr. Klayman, in a proceeding which lacks merit no less, has fallen on deaf ears. Instead, Chairman Kaiser though his Board rubber stamped a fatally flawed hearing committee recommendation in the Board's Report, which report also constitutes merely a recommendation which has since been challenged and appealed. Tellingly, this Board Report contained a myriad of prima facie factual and legal errors, much less failed to show the requisite clear and convincing evidence to even recommend that Mr. Klayman had violated any ethical rules. It is clear that Chairman Kaiser, as Mr. Klayman had also requested, never even properly and thoroughly reviewed the record created by the biased hearing committee, before issuing the Board's recommendation.

41.    In addition, Mr. Kaiser has participated in or ratified highly damaging published statements of D.C. Bar officials smearing, defaming and harming Mr. Klayman and his clients with extra-legal and unethical comments which they made to the leftist pro-Democrat and anti-

Trump publication Politico and which were widely published and disseminated in an article titled "*A Conservative Legal Gadfly Faces the Music*" on September 16, 2020, which has spawned a defamation lawsuit. *See Klayman v. Politico LLC et al*, 50-2020-CA-011868 (15th Jud. Cir. Fl.) Mr. Kaiser refused to police this unethical and illegal conduct, more than just suggesting that the public comments may have come from him. In any event, Mr. Kaiser has personally ratified them, as he has taken no action to have them retracted or investigated by way of a requested internal review by the Board.

42.   Again, this is set forth in Mr. Klayman's December 21, 2020 letter to Mr. Kaiser. Exhibit 5.

43.   Mr. Klayman again requested copies of the ex parte correspondence which Mr. Kaiser admits was sent, notwithstanding his continued failure to police the unethical misconduct his agents of the Bar's disciplinary apparatus, but none has been provided. Exhibit 5.

44.   As a result, not only has Mr. Klayman been irreparably harmed, and as importantly, his clients' interests have been prejudiced and damaged as well.

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
#### *Tortious Interference*

45.   Mr. Klayman repeats and re-alleges all of the previous allegations of the entirety of this Complaint, with the same force and effect, as if fully set forth herein again at length.

46.   Mr. Klayman has had and will have ongoing business relationships and/or prospective business relationships with clients in cases who have appeared before this Court and the U.S. Court of Appeals for the Ninth Circuit. Mr. Klayman has been a member in good standing of the Ninth Circuit, which oversees this honorable Court, for over twenty years.

47.     Defendants, acting in concert as joint tortfeasors, knew of the business relationship and/or contracts between Mr. Klayman and his clients based on previous cases and his legal representation in same.

48.     Defendant willfully, intentionally, maliciously and vindictively interfered with these legal representation agreements and contracts and current and prospective client interests in general by sending out an unauthorized and extra-legal gratuitous letters and/or other communications notifying the Ninth Circuit about a non-final, ongoing bar disciplinary proceeding, although they had no authority to do so. On information and belief Defendants have also engaged in other improper ex parte communications with the Ninth Circuit and this honorable Court.

49.     As a direct and proximate result of Defendants' actions, Mr. Klayman  has suffered irreparable harm to his reputation and good will and standing in the legal profession, the Ninth Circuit and this Court, which damages his business and person and his calling, as well as to his clients' and other interests.

## SECOND CAUSE OF ACTION
### *Abuse of Process*

50.     Mr. Klayman repeats and re-alleges all of the previous allegations of the entirety of this Complaint, with the same force and effect, as if fully set forth herein again at length.

51.     Defendants have abused process by prematurely, maliciously and vindictively, notably seeking to harm Mr. Klayman  before he is even adjudged whether to have committed any ethical violation (which he did not), by notifying and on information and belief engaging in other ex parte contacts with other courts and state bars, and in particular the Ninth Circuit about an ongoing, non-final bar proceeding in the District of Columbia in order to prejudice and harm Mr. Klayman's and his clients' standing before the Ninth Circuit, this honorable Court and other

courts and bar associations.

52.    The unethical and illegal conduct of Defendants constitutes abuse of process because they have also  misused the attorney discipline process to harass and financially and otherwise harm Mr. Klayman by impairing and preventing him from practicing on behalf of his clients  in jurisdictions, and in particular this jurisdiction, which do not concern the D.C. Bar's jurisdiction.

53.    Defendants possessed an ulterior motive insofar as they are driven by a political and gender based personal animus and vendetta in order to have Plaintiff Klayman removed from the practice of law, harm his clients' interests and have Plaintiff Klayman bankrupted as a result of the enormous time and monies required to address and seek to remedy Defendants' illegal acts.

54.    This abuse of process, as pled herein, has caused and is continuing to cause severe and irreparable damage to Plaintiff Klayman, as well as to his clients' and other interests.

55.    Defendants, each and every one of them, are not above ethics and the law and have no absolute immunity for their actions, as they were undertaken in contravention and outside of their lawful and delegated authority and jurisdiction, as set forth above. However, Defendants' tortious conduct and modus operandi are that they can maliciously and vindictively do as they please, without ethical or legal consequence, as in their view they do not have to abide by the same ethical and legal standards as other members of the District of Columbia Bar. As just one example, as set forth above, Defendants, each and everyone one of them, have no authority or jurisdiction to tortuously interfere with, abuse process and harm Plaintiff Klayman in the state of Texas, where their so called ethics findings were  time-barred in any event. And, the same lack of jurisdiction holds true with regard to the Ninth Circuit and this Court.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment against each Defendant, jointly and severally, as joint tortfeasors as follows:

(a)     For general (non-economic), special (economic), actual and compensatory damages in excess of $75,000.00, as well as injunctive relief;

(b)      For actual and consequential damages in a sum reasonable to a jury;

(c)     For punitive damages in an amount to be determined at trial by a jury of Plaintiff's peers to punish and impress upon Defendants the seriousness of their conduct and to deter similar conduct in the future;

(d)     For immediate production of all of the above-referenced ex parte communications' so Mr. Klayman can address and defend his and his clients' interests against the unethical smear campaign and abuse of process that has been perpetrated against and harmed him and his clients' interests.

(e)     For attorneys' fees, expenses and costs of this action, and;

(f)     For preliminary and permanent injunctive relief and such further relief as this Court deems necessary, just and proper.

### DEMAND FOR TRIAL BY JURY

Mr. Klayman demands a trial by jury on all counts as to all issues so triable.


**Dated**: December 24, 2020                          Respectfully Submitted

Larry Klayman, Esq.
KLAYMAN LAW GROUP, P.A.
2020 Pennsylvania Ave NW #800
Washington DC 20006
Tel: 561-558-5536

Email: leklayman@gmail.com

*Pro Se*

EXHIBIT 1

In Re: Larry E. Klayman
July 18, 2019

|  | Page 806 |
|---|---|

1   Cliven Bundy, who thankfully no one else will
2   represent unless someone like Larry Klayman comes
3   in.
4      There are other lawyers who have done this
5   in the past, with different political stripes --
6   Ralph Nader, who actually I know, counselor, others,
7   you need lawyers like that. You don't want to remove
8   them from the practice of law because then you leave
9   criminal Defendants and civil litigants at the mercy
10   of the big powers, the rich and the powerful who want
11   to and will use their power to try to destroy them,
12   thank you.
13      CHAIRPERSON MIMS: Any response, Miss
14   Porter?
15      MS. PORTER: No.
16      CHAIRPERSON MIMS: Alright, why don't we
17   take a break. I would say come back and wait for us
18   in 20 minutes. I don't know that we'll be done in 20
19   minutes. It may be longer. If you want to take a
20   longer break, we can say a half an hour, a half an
21   hour? Let's reconvene at a half an hour, and if
22   we're not back in a half an hour it means that we're

|  | Page 808 |
|---|---|

1   through the misrepresentation of Mr. Whipple's
2   experience. Mr. Klayman's misrepresentation or
3   misleading of his own criminal experience. The issue
4   of not disclosing the Hearing Committee report, and
5   addressing his arguments that it wasn't final, that
6   it was an ongoing matter and also that the
7   affidavits, the sworn testimony that he had violated
8   a rule, that that had been withdrawn.
9      Accusing Judge Navarro of being malicious
10   and corrupt. For each of these items -- we need you
11   to specifically spell out how that rises to the level
12   of clear and convincing. And on the same token, Mr.
13   Klayman, we need -- what I'd like you to do is for
14   your statement of facts, listed out in paragraph
15   form, so that Mr. Klayman can either admit it or
16   deny it.
17      And Mr. Klayman, we need you to respond
18   specifically to the statements in the brief. I
19   understand that you may think that there is a big
20   issue with 6th Amendment in here, we don't really see
21   that. There may be a very limited case in which you
22   might bring that up, but I doubt it's going to be

|  | Page 807 |
|---|---|

1   not ready yet, so just try and hang around closely to
2   the courtroom.
3      We're off the record at 3:57, thank you.
4      (Off the record 3:57.)
5      (On the record 5:22.)
6      CHAIRMAN MIMS: Alright, we're back on
7   the record at 5:22. So, the Hearing Committee has
8   been unable to reach a non-binding determination.
9   So, at this point we're going to have to set a
10   briefing schedule.
11      Before we do that, I do want to talk a
12   little bit about what we'd like to see in the briefs
13   in some of the areas that -- of why we're unable to
14   come to an agreement and find a violation.
15      It's a clear and convincing case, so for
16   the statements and let's start with the pro hac
17   motion. For the statements, for the omissions or the
18   misleading things that you found in there where you
19   believe that there were violations, we would like you
20   to be very specific about those.
21      I know that in your closings you did go
22   through a number of examples. I mean we've gone

|  | Page 809 |
|---|---|

1   much.
2      And bar counsel's brief, the extent that
3   it's in your response I think can be pretty limited.
4   I mean you've made your points on the 6th Amendment
5   issue and the constitutionality issues. We've heard
6   them. I think the relevance is probably limited in
7   terms of your advocacy of the issue, and so I really
8   need you to respond so that the Committee can sift
9   through all of this.
10      Respond to her points in the brief. You
11   admit it, or you deny it. And if you deny whatever
12   fact it is, give us a specific reason of why you deny
13   it. Okay. So, the timing is generally 10 days
14   after the transcript comes in, and as I understand it
15   the transcript comes in in two weeks.
16      MR. KLAYMAN: Your Honor, may I address
17   you on that?
18      CHAIRPERSON MIMS: Yes.
19      MR. KLAYMAN: If we may have additional
20   time, my wife is pregnant and will be giving birth
21   around this time period.
22      CHAIRPERSON MIMS: Okay, when is --

In Re: Larry E. Klayman
July 18, 2019

## Page 770

1 ask the court to sanction him, and it's very rare for
2 a court to do it sua sponte, but that does not mean
3 that the statements that he made to the court were
4 not false as the court found, including the 9th
5 Circuit, or that these claims that he made against
6 Judge Navarro, Judge Bybee and others had any merit
7 -- they didn't.
8     No reasonable lawyer could think that the
9 claims that he made against Judge Navarro and later
10 Judge Bybee had any merit or any chance of success.
11 You know, and again legally they were without basis
12 -- judges are absolutely immune, so are Presidents.
13     The allegations of this vast conspiracy
14 between Judge Navarro and others -- as Judge Navarro
15 found, displayed a lack of respect for the judiciary
16 and a complete lack of ignorance of the independent
17 jury.  And as the 9th Circuit found, they were for
18 intimidation and retaliation because she had denied
19 his pro hac vice.
20     And I'll get finally to the last issue and
21 that is kind of the repetitive nature of the claims.
22 Yes, in some of the petitions Mr. Klayman said they

## Page 771

1 were changed circumstances, but if you go back and
2 look at the second 9th Circuit decision denying his
3 second petition, which I believe is 79, you'll see
4 that those changed circumstances -- the IG's report,
5 or alleged government misconduct.
6     They had nothing to do with whether or not
7 the pro hac vice application should have been granted
8 or that Judge Navarro had a basis to deny it.  And
9 indeed, these claims have changed circumstances for
10 procedural, completely inappropriate because they
11 were being raised for the first time on appeal.  But
12 it was the -- it wasn't just these changed
13 circumstances, but a lot of the allegations that
14 I've already gone over -- that Mr. Whipple was
15 threatened with contempt, that Mr. Bundy was ordered
16 in solitary confinement.
17     That Mr. Klayman had been completely
18 honest on his pro hac vice, that Judge Bybee lacked
19 appreciation and sensitivity because his prior
20 rulings or involvement in the drafting of a memo.
21 These were repeated, sometimes verbatim, over and
22 over and over again.

## Page 772

1     And even his claim, which disciplinary
2 counsel doesn't claim was illegitimate or wasn't made
3 in good faith, that Mr. Bundy should have been given,
4 you know, his right to counsel of choice
5 notwithstanding the disciplinary matters.  That's a
6 legitimate argument, but it's not okay to raise it
7 in at least 15 -- at least 15 separate pleadings,
8 over and over and over again, which he did, and I can
9 cite to all of them in our post-hearing brief.
10     So, I think the evidence shows both
11 clearly and convincingly that Mr. Klayman engaged in
12 misconduct.  And I confirmed that the record of the
13 pre-hearing motions and -- which include the
14 disciplinary complaints that Mr. Klayman filed
15 against disciplinary counsel, are already part of the
16 record.
17     And I'd say his conduct in this proceeding
18 confirms that he should not continue to have the
19 privilege of being a lawyer because he cannot conform
20 himself to the ethical rules.
21     CHAIRPERSON MIMS:  Before you step down, I
22 don't know if anyone else has any questions.  I do

## Page 773

1 have one question and maybe you've answered it, but I
2 want to be sure I'm clear.  Under Rule 8.1, which is
3 one, it's in the specification of charges and you've
4 discussed a little bit.  Rule 8.1 is, you say, "In
5 his application and supplemental application for
6 admission to the District Court, Respondent
7 knowingly made false statements of fact or material
8 fact, and he failed to disclose a fact necessary to
9 correct a misapprehension known by the applicant."
10     I just want to be clear on what that
11 misapprehension is that you're referring to?
12     A    Well, and I think I've kind of gone over
13 it with Judge Navarro understanding what was going on
14 with respect to the disciplinary proceedings and also
15 with respect to the two judges who had banned him and
16 kind of the basis for that decision, and everything
17 else.
18     CHAIRPERSON MIMS:  Alright, alright, thank
19 you.
20     MR. KLAYMAN:  May I take two minutes and
21 go to the restroom?
22     CHAIRPERSON MIMS:  Yes, sure.  Let's go